# NEWMAN MYERS KREINES GROSS HARRIS, P.C.

JAN KEVIN MYERS
CHARLES W. KREINES
OLIVIA M. GROSS
IAN F. HARRIS
CHARLES DEWEY COLE, JR**

STEPHEN N. SHAPIRO
Of Counsel

RICHARD L. NEWMAN (1921-2006)
ABRAHAM S. ALTHEIM (1954-2005)

ATTORNEYS AT LAW

40 WALL STREET
NEW YORK, NY 10005
(212) 619-4350
FAX: (212) 619-3622
www.nmkgh.com

NEWMAN MYERS KREINES GROSS HARRIS
A PARTNERSHIP PRACTICING IN NEW JERSEY AFFILIATED WITH
NEWMAN MYERS KREINES GROSS HARRIS, P.C.

ABRAHAM A. FRIEDMAN
JANINE SILVER
TIMOTHY B. PARLIN*
ADRIENNE YARON
LUIS G. SABILLON*
MICHAEL WINTER
PATRICK M. CARUANA*
SHAHIN Y. MASHHADIAN
DOUGLAS A. MALLETT
ERIK E. HARRIS
CHRISTOPHER P. MYERS*

* ALSO ADMITTED IN NJ
** ALSO ADMITTED IN NJ, DC & TX

August 14, 2019

**VIA CM/ECF**

The Honorable Lorna G. Schofield
United States District Court for the
  Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

> Re: **Kiss v. Clinton Green North, LLC, et al.**
> **Docket No. 17 Civ. 10029 (LGS)**
> **Newman Myers Ref. No.: NAVB 22303**

Dear Judge Schofield:

We represent Defendants/Third-Party Plaintiffs Clinton Green North, LLC, Dermot Clinton Green, LLC, and AvalonBay Communities, Inc. ("AvalonBay") in the above-referenced matter. Due to technological reasons that I cannot pretend to fathom, we could not file AvalonBay's letter with the Court until this morning. I apologize to the Court and Counsel for the delay. Per the Court's request, we write this letter in Opposition to Judy Painting Corp.'s ("Judy Painting") Pre-Motion Letter for Summary Judgment [Docket No. 131] as well as Z & Z Service Inc.'s ("Z&Z") Pre-Motion Letter for Summary Judgment [Docket No. 130]. We will address these in turn.

**I.     Judy Painting's Request for Summary Judgment Must be Denied**

**A.     Plaintiff Was Not a "Special Employee" of Judy Painting**

Judy Painting has not, and indeed cannot, demonstrate that it assumed exclusive control over Plaintiff's work. Any assertions to the contrary mischaracterize the testimony in the record. Richard Gyurus ("Richie") testified that he was not a Judy Painting employee. Instead he stated that he was simply helping them out. i.e., he was working for himself as an independent contractor. Richie stated that on the day before the alleged incident - September 11, 2017, Z & Z, as opposed to Judy Painting, told him what work he was to coordinate painting at Clinton Green North, including Apartment 10A where the alleged accident occurred on September 12th.

In turn, Richie sent Plaintiff Clinton Green North's address and the apartment number to be painted. No one from Judy Painting was involved in this chain. Richie testified that Plaintiff was not an employee of Judy Painting. He stated that Judy Painting hired only subcontractors and that Plaintiff would not be working as an employee of Judy Painting. Judy Painting subcontracted the painting of Apartment 10A to Z & Z, which in turn hired Plaintiff to do the work and subsequently paid him for that work. Richie stated that he never provided instructions to Plaintiff on how he should paint the apartment at Clinton Green North. Instead, Richie stated that Plaintiff would check in with him, as opposed to Judy Painting, at the end of his work day to advise if he was finished with the job. Zsolt Jeges, one of the owners of Z & Z, explained that in 2017 the subcontractor painters who were being used on a trial basis, such as Plaintiff, were paid by Z & Z until they passed their respective trials.

Applying the "special employee" factors to the record here, there is no evidence that affirmatively establishes that Judy Painting supervised Plaintiff as it would have supervised one its own employees. The decision as to where Plaintiff was to work was not made by Judy Painting, but by Z & Z. Nor does the record establish that once Plaintiff reported to Clinton Green to paint Apartment 10A he was treated from a supervisory standpoint as a Judy Painting employee. The fact that Plaintiff was left essentially unsupervised as he painted Apartment 10A does not permit the inference that Judy Painting did in fact assume control over the manner, details and ultimate result of Plaintiff's work. To the contrary, it more persuasively supports the inference that Judy Painting subcontracted the Clinton Green North job to Z & Z, who in turn sought the services of an experienced painter such as Plaintiff, because it did <u>not</u> wish to have to supervise the "manner, details and ultimate result" of Plaintiff's work, and could, if it were dissatisfied, simply ask Z & Z to find a replacement for Plaintiff.

Furthermore, there must be at least a question as to whether the alleged relationship was one of which Plaintiff was aware and consented to, per the requirements of <u>Thompson v. Grumman Aerospace Corp.</u>, 78 N.Y.2d 553, 558-59 (N.Y. 1991); <u>Short v. Durez Div. - Hooker Chem. & Plastic Corp.</u>, 280 A.D.2d 972 (4th Dep't 2001). Finally, absent any concrete evidence that Z & Z surrendered control over Plaintiff to Judy Painting, it is presumed that such control continued and any proposed amendment will be futile since there is no evidentiary record to support it.

Notwithstanding Judy Painting's cullings from the record and allusions to assumption of exclusive control over Plaintiff, there is no evidence that affirmatively establishes that Judy Painting ever supervised Plaintiff as it would have supervised one its own employees. Moreover, the testimony relied upon by Judy Painting simply does not permit the legal conclusion that Plaintiff in effect became Judy Painting's employee. Rather, the proffered evidence shows that Mr. Kiss went about his task of painting the apartment at Clinton Green North without anyone from Judy Painting telling him how to do his in job or supervising him. Thus, per the tenets of <u>Fung, supra</u>, no "special employee" relationship ever existed and Judy Painting's request to file a Motion for Summary Judgment based upon the "special employee" Affirmative Defense must be denied.

B. **Judy Painting Is a Proper Labor Law Defendant**

In one breath, Judy Painting states that from the moment plaintiff was initially retained to the date of the alleged accident, "he received his work instructions exclusively from Judy contractors Gyrus and Laci." [Docket No. 131 at p. 2]. Then Judy Painting argues that "Judy did not coordinate trades or directly supervise the project. Rather, as noted above, it merely directed plaintiff where to report to work on the day of the accident and had no one on site to enforce safety rules." [Docket No. 131 at p. 3]. Quite simply, it cannot have it both ways.

The key criterion in ascertaining Labor Law § 240(1) liability is <u>not</u> whether the party charged with the violation actually exercised control over the work, but, rather, whether s/he had the right or authority to do so. <u>Kelly v. LeMoyne College</u>, 199 A.D.2d 942, 606 N.Y.S.2d 376 (3rd Dep't 1993); <u>Weber v. Baccarat, Inc.</u>, 70 A.D.3d 487, 488, 896 N.Y.S.2d 12 (1st Dep't 2010); <u>Turcillo v. Bovis Lend Lease, Inc.</u>, 101 A.D.3d 625, 958 N.Y.S.2d 86 (1st Dep't 2012). At the very least, questions of fact surround the breadth of Judy Painting's instruction/control of plaintiff that should be heard by a jury and, therefore, preclude summary judgment.

C. **There is A Valid Contract Between AvalonBay and Judy Painting**

AvalonBay contracted with Judy Painting to perform work at Clinton Green North pursuant to the terms and conditions of the Master Agreement, which detailed the Supplier's Liability, Indemnification provisions as well as the Supplier's Insurance Requirements. Judy Painting argues that the Master Agreement is unenforceable because it is: (i) undated; does not identify the Supplier; does not contain a time period; does not delineate the scope of work; and the indemnity provision does not refer to painting work. [Docket No. 131 at p. 4].

On or about October 9, 2015, Zoltan Mihalyi, Vice President of Judy Painting signed the Master Agreement. Additionally, Mr. Mihalyi initialed the bottom right-hand corner of each and every page of the Master Agreement, including the Exhibits attached thereto. The Master Agreement stated that AvalonBay "desire[d] to have certain services performed at one or more of its multifamily apartment communities (collectively, the 'Communities', and individually each a 'Community') by Supplier and Supplier agrees to perform these services for AvalonBay under the terms and conditions set forth in this Agreement." The Master Agreement contained key provisions regarding the Supplier's Liability [Paragraph 9], Indemnification [Paragraph 29], Supplier's Insurance Requirements [Paragraph 30], and Supplier is an Independent Contractor [Paragraph 37]. Importantly, Paragraph 42 required, in pertinent part, that "Supplier shall furnish Owner and Manager **Exhibit D – "Notification of HCS Program"** for each Property and Material Safety Data Sheets (MSDS) for all products to be provided by Supplier in connection with performance of the work under this Contract. [Emphasis added]. Mr. Mihalyi acknowledged his role as a Supplier under the Master Agreement by signing and initialing Exhibit D, which required <u>Suppliers</u> to "provide appropriate hazard information for each chemical that my company brings on-site, and that this information must be provided in person to the Maintenance Manager (or any other AvalonBay Communities, Inc. employee as designated by the property manager)." [Emphasis added].

Pursuant to the terms of the Master Agreement, Judy Painting agreed to purchase general liability coverage with bodily injury limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. Additionally, Judy Painting agreed to purchase excess liability umbrella coverage with limits of $2,000,000 per occurrence. Judy Painting also agreed to and did furnish a Certificate of Insurance to AvalonBay, its subsidiaries and affiliates, evidencing the coverages set forth above naming AvalonBay Communities, Inc., 671 North Glebe Road, Arlington, VA 22203, and all other primary, subsidiary and affiliated locations, further evidencing its acceptance of the terms of the Master Agreement. The Certificate of Insurance identifies Merchants Mutual as the issuer of primary policy no. BOPI073724 for the policy period June 30, 2017 to June 30, 2018, with a limit of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate. Merchants Mutual is also listed as the issuer of umbrella policy no. CUP9146868 for the policy period June 30, 2017 to June 30, 2018, with a limit of liability of $5,000,000 per occurrence and in the aggregate. The Certificate Holder for both the primary and umbrella policies is listed as AvalonBay Communities, Inc., and the description of locations covers "[w]ork at all Avalon Bay owned properties in the state of New York. Certificate Holders are name[d] as Additional Insured." Both of these policy periods include the date of alleged loss in the Underlying Lawsuit, September 12, 2017. Thus the location of the alleged accident is a covered location under the Merchants Mutual policy as of the alleged date of loss – September 12, 2017.

In addition to the Master Agreement, Judy Painting provided AvalonBay with a "NY Metro Region Turn Painting Proposal, dated June 6, 2013, which listed a price of $228 for re-painting 1 bedroom/bath apartment and $80 for re-painting the ceiling. Pursuant to these prices, Judy Painting performed under the Master Agreement and painted Apartment 10A at the Premises, which is the apartment where Plaintiff's alleged accident in the Underlying Lawsuit occurred. The invoice listed painting Apartment 10A ($228.00) as well as its ceiling ($80.00) for a total of $335.34, including tax.

Accordingly, the record is replete with objective evidence that Judy Painting intended to be bound by the terms and conditions of the Master Agreement. At the very least, whether the Mater Agreement, with its attendant indemnification provisions, came into being is a question of fact to be resolved by a jury. Flores, 4 N.Y.3d at 370, 795 N.Y.S.2d at 496. As such, Judy Painting's request to have all claims dismissed against it must be denied.

## II. Z&Z's Request for Summary Judgment Must be Denied

As detailed above, Z&Z's statement that "[i]t is undisputable from the evidence that Z&Z did not in any way provide direction, supervision or control of Plaintiff's work on the date of the incident or at any time," is belied by the facts presented above. [Docket No. 130 at p. 2].[1] At the very least, in light of the conflicting testimony presented in both Judy Painting's and Z&Z's submissions, questions of fact exist precluding both motions for summary judgment.

---

[1] It should also be noted that the Workers Compensation Board determined that Z&Z was Mr. Kiss' employer on the date of the alleged accident.

Next Z&Z argues that "there can be no claim for contractual indemnification by Judy, since Judy acknowledges in the 3-20 Motion that the Contract between Judy and Z&Z was drafted and executed after the date of the accident and was not in effect when Plaintiff was injured." [Docket No. 130 at p. 3]. "[A]n unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound." Flores v. Lower E. Side Serv. Ctr., Inc., 4 N.Y.3d 363, 369, 795 N.Y.S.2d 491, *rearg denied*, 5 N.Y.3d 746, 800 N.Y.S.2d 376 (2005). "'In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds'". Flores, 4 N.Y.3d at 368, *quoting* Brown Bros. Elec. Contrs. V. Beam Constr. Corp., 41 N.Y.2d 397, 399, 393 N.Y.S.2d 350 (1977); Minelli Constr. Co., Inc. v. Volmar Constr., Inc., 82 A.D.3d 720, 721, 917 NYS2d 687 (2nd Dep't 2011).

What is undisputed is that Z&Z exhibited "the objective manifestations of the intent" by performing for two (2) months per the parties' agreement prior to the execution of the contract with Judy Painting, per the tenets of Flores. See 4 N.Y.3d at 368. As such, Z&Z's request to dismiss Judy Painting's contractual indemnification claim should be denied.

Respectfully submitted,

NEWMAN MYERS KREINES GROSS HARRIS, P.C.

Timothy B. Parlin

TBP

cc:

**VIA CM/ECF**

Holly Ostrov Ronai, Esq.
Timothy Lavin, Esq.
Attorneys for Plaintiff
Ronai & Ronai, LLP
34 Adee Street
Port Chester, New York 10573

Brendan B. Gilmartin, Esq.
Attorneys for Defendant/ Third-Party Defendant Judy Painting Corp.
Wood Smith Henning & Berman LLP
685 Third Avenue
New York, New York 10017

Joseph A. Ruta, Esq.
Attorneys for Third-Party Defendant Z & Z Services, Inc.
Ruta, Soulios & Stratis LLP
211 East 43rd Street
24th Floor
New York, NY 10017